UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVON L. ELLIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:17-cv-01726-JHE |
| SGT. L. AARON, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER[1]**

Plaintiff Davon L. Ellis ("Ellis") filed a *pro s*e complaint seeking monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights during his incarceration at Donaldson Correctional Facility in Bessemer, Alabama. (Doc. 1). The plaintiff named Sgt. L. Aaron ("Aaron") and Officer J. Gunn ("Gunn") as defendants.[2] (*Id*.). In accordance with the usual practices of this court, on October 30, 2017, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 6). After receiving the defendants' special report, on April 30, 2018, the undersigned notified the parties that he would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 26).

On August 24, 2018, the undersigned issued a Report and Recommendation that the motion

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 38).

[2] In their response, the defendants provide their full names as Samuel Aaron and Justin Gunn. (Doc. 25 at 1).

for summary judgment be granted as to the claims against the defendants in their official capacity and denied as to the claims against the defendants in their individual capacities; and that Ellis's claim for injunctive relief be dismissed. (Doc. 32). Thereafter, United States District Judge Abdul K. Kallon entered a Memorandum Opinion and Order adopting the report and accepting the recommendation. (Doc. 33).

In accordance with 28 U.S.C. § 636(c), on November 7, 2018, the parties unanimously consented to magistrate judge jurisdiction. (Doc. 38). Thereafter, the undersigned granted Ellis's motion for appointment of counsel (doc. 40), and, after a telephone conference with the parties, entered a scheduling order outlining limited discovery and a dispositive motion deadline (doc. 48). On January 21, 2020, defendant Aaron and defendant Gunn each filed a motion for summary judgment seeking to have the claims asserted against them dismissed. (Docs. 51 & 55). Those motions are fully briefed. (Doc. 52, 56, 60, 62, & 63). For the reasons stated below, the defendant Gunn's motion for summary judgment (doc. 55) is **GRANTED**, and defendant Aaron's motion for summary judgment (doc. 51) is **DENIED**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to

establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

Prior to the July 16, 2017 incident (discussed below), Ellis, who was an inmate at Donaldson Correctional Facility (doc. 1), was involved in a basketball game where he and Officer Gunn made a bet, which they would often do. (Doc. 53-1 at 8 (24:4-22)). According to Ellis, Gunn lost the bet and there was an argument. (*Id.* (24:13-25:23)). Gunn told Ellis, "I'm [a] Blood, I will get you. (*Id.* at 9 (26:2-3)).

### A. Incident Inside Ellis's Cell with Officer Gunn

On July 16, 2017, around 6:00 AM, Ellis was in his cell with two other inmates. (Doc. 53-1 at 9 (26:10-20); doc. 62-2 at 15 (14:3-8)). Ellis saw about forty officers enter his unit and immediately suspected the officers were there to confiscate contraband. (Doc. 53-1 at 9 (26:14:27:4)). Sgt. Aaron and Officer Gunn, along with the other officers, were conducting a cell block "shakedown" in D-Unit. (Doc. 62-2 at 15 (14:13-15:1)). Sgt. Aaron and Lt. Joshua Murphree were in charge of the cell searches. (Doc. 62-1 at 27-28 (27:20-28:1)). According to Aaron, there were approximately eighteen to twenty officers involved in the search of ninety-six inmates in D-Unit. (*Id.* at 28 (28:5-9)). The officers were instructed to inspect each cell in groups of two. (*Id.* at 4-5).

When he saw the officers, Ellis grabbed his cell phone (which he knew was contraband), then, according to Ellis, Officer Gunn entered his cell. (Doc. 53-1 at 9,12 (27:4-8, 38:5-13)). Ellis testifies that, without order or instruction, Gunn snatched the cell phone out of Ellis's hand, then started "swing[ing] on" Ellis, and they started fighting. (*Id.* (27:9-14)). According to Ellis, while he and Gunn were fighting, another officer drug him out of the cell by the hem of his pants; Gunn was trying to stomp on his face, and the other officer got Ellis up and sitting on a bench. (*Id.* (27:15-28:6)).

Officer Gunn tells a different story. According to Gunn, he approached cell D-6, which was occupied by three inmates: Ellis, Centoria Smith, and Travon Washington. (Doc. 62-2 at 19 (18:5-22)). As he entered, Gunn opened the door and saw Washington and Ellis with two cellular phones. (*Id.* at 19-20 (18:23-19:2). Gunn testifies that he instructed them to give him the phones, but Washington rushed and tackled Gunn out of the cell. (*Id.* (19:2-5)). According to Gunn, Ellis was attempting to do the same, but Gunn was able to apprehend Ellis and tackle him to the bottom

4

rack of the cell. (*Id.* (19:5-8)). Then, Gunn, believing Ellis was apprehended by Officer Fox, went after Washington (outside of the cell), admitting he stomped Washington two times in the face. (*Id.* (19:9-14)).

Officer Gunn contends he did not punch, kick, or otherwise strike Ellis at any time during the cell search, instead testifying that he tackled Ellis to the bottom bunk of the cell because Ellis attempted to flee the cell. (Doc. 62-2 at 20 (19:2-20)). Officer Murphree also testified that he did not witness Gunn hit, punch, kick, or otherwise strike Ellis at anytime during the cell search. (Doc. 57-4 at ¶ 5).

### B. Continuation of Incident Outside of the Cell with Sgt. Aaron

According to Ellis, he sat on the bench, unsecured, for about five minutes before Sgt. Aaron arrived. (Doc. 53-1 at 13 (44:13-21)). Aaron then walks up to Ellis, and, based on Aaron's "aggressive" approach, Ellis believes that Aaron knew he fought with Gunn. (*Id.* at 17 (58:6-18)). As Aaron approaches, he orders Ellis to stand up, and Ellis stands. (*Id.* at 17-18 (60:6-62:8)). Even though Ellis stood up, Aaron hits Ellis in the legs and buttocks with a baton and immediately sprays him in the face with mace. (*Id.*). Aaron then orders Ellis to get on the wall. (*Id.* at 19 (69:10-16)). Ellis did not comply with the order and testified he was "still tripping off [Aaron] spraying me" and asked Aaron "why are you spraying me man" and why are you "hitting and spraying me[?]" (*Id.* (69:16-19)). Officer Tillman approached Ellis and escorted him to the wall, placing Ellis in handcuffs. (*Id.* at 21 (74:9-12)).

Sgt. Aaron testified that, while Gunn and Washington were scuffling, he saw an inmate coming out of his cell, then noticed it was Ellis. (Doc. 62-1 at 37 (37:5-11)). According to Aaron, he told Ellis to "stop," but Ellis would not stop blurting out obscenities to Aaron and the rest of the Block, trying to get them "hyped up." (*Id.* (37:13-17)). Aaron then told Ellis to "calm down"

5

and ordered him to face the wall.  (*Id.* (37:17-18)).  Aaron testifies that Ellis would not listen and that Ellis threw his hands up still saying stuff, so Aaron sprayed Ellis and told him to turn around to be handcuffed.  (*Id.* at 18-22).   After being sprayed, Ellis was handcuffed and taken to the infirmary for decontamination.  (*Id.* at 37-38 (37:21-38:1)).

### C.  Ellis's July 16, 2017 Visit to the Infirmary

According to the body chart from Ellis's visit to the infirmary, although Ellis stated "[h]e jumped me," the only injuries documented as a result of the cell search were red eyes with swelling under the left eye and left shoulder pain.  (Doc. 62-4).  According to Officer Murphree, who observed Ellis after he was restrained, Officer Murphree did not notice any physical injuries to Ellis, the absence of which was confirmed by medical records.  (Doc. 57-4 at ¶ 7).

### D.  Additional Testimony from Ellis

Ellis further testified that the officers at Donaldson know that if they "pull up" on him, he will fight the officers" and that he "ain't the one to be pulling up on."  (Doc. 53-1 at 26 (97:11-19)).  Ellis explained that "[t]hat's why they are quick to spray me with the mace and they quick to hit me with the stick."  (*Id.*).  Ellis also testified that he did not suffer any injuries from Aaron hitting him with the baton because Aaron did not hit him that hard.  (*Id.* at 29, 33 (109:1-12; 124:19-20)).

After the incident, Ellis wrote a letter to Commissioner Mosley characterizing his altercation with Aaron as "sexual assault."  (Doc. 1 at 8).  Ellis then testified that he really didn't feel that Aaron sexually assaulted him but said that to get the Commissioner to act more quickly.  (Doc. 53-1 at 27 (98:17-99:1)).  Ellis then explained that if he felt Aaron had sexually assaulted him, he would have stabbed Aaron in the face.  (*Id.*).

### III. Analysis

#### A. Excessive Force Claim Against Officer Gunn

##### 1. Qualified Immunity

"[Q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymbple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In determining whether it is appropriate to apply qualified immunity to a particular case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the Plaintiff[], show that the government official's conduct violated a constitutional right." *Dalrymbple*, 334 F.3d 995 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the summary judgment facts do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Officer Gunn argues that there is no need for further inquiry because Ellis has failed to present sufficient evidence to establish a constitutional violation. (Doc. 56 at 7). Specifically, Gunn contends the evidence shows that Ellis's injuries are *de minimus* in nature and insufficient to support a §1983 claim and that the force he (Officer Gunn) applied during the cell search was reasonable under the circumstances given the dangerous situation present at the time and was not applied wantonly for the purpose of inflicting pain. (*Id.* at 7-8).

##### 2. Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, maintaining institutional security and preserving internal

order and discipline are essential goals of a prison administration and may require curtailment of prisoners' constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff, and courts normally do not second-guess prison officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998). When disciplinary action is taken by a prison official to prevent a security threat or to restore official control, the Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm. *Sims v. Mashburn*, 25 F.3d 980, 984 (11th Cir. 1994).

To determine whether the use of force was wanton and unnecessary, courts consider: (1) the need for the application of the force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts to temper the severity of the response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The court should also consider a fifth factor, the extent of the injury suffered. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). These are referred to as the *Hudson* factors.

To create a genuine issue of fact, the plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically. Courts "do not generally second-guess prisoner officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

### 1. Officer Gunn's Use of Force Was Not Unreasonable

Ellis testifies Officer Gunn repeatedly punched and kicked him in the head while he was dragged out of the cell by another, unnamed correctional officer. (Doc. 53-1 at 9 (27:9-28:6)). He

argues that Gunn has failed to show that this use of force was reasonable, and that the evidence Ellis has presented shows the use of force was "malicious" and "sadistic" because Ellis was not a threat. (Doc. 62 at 5). At first glance, there appears to be a material factual dispute regarding how the physical altercation between Officer Gunn and Ellis unfolded in Ellis' cell. Ellis testified that, without order or instruction, Gunn snatched the cell phone out of Ellis's hand, then started "swing[ing] on" Ellis, and they started fighting. (Doc. 53-1 at 9 (27:9-14)). According to Ellis, while he and Gunn were fighting, another officer drug him out of the cell by the hem of his pants; Gunn was trying to stomp on his face, and the other officer got Ellis up and sitting on a bench. (*Id.* (27:15-28:6)). Gunn's testimony tells a different story. According to Gunn, he approached cell D-6, which was occupied by three inmates: Ellis, Centoria Smith, and Travon Washington. (Doc. 62-2 at 19 (18:5-22)). As he entered, Gunn opened the door and saw Washington and Ellis with two cellular phones. (*Id*. at 19-20 (18:23-19:2). Gunn testifies that he instructed them to give him the phones, but Washington rushed and tackled him out of the cell. (*Id.* (19:2-5)). According to Gunn, Ellis was attempting to do the same, but Gunn was able to apprehend Ellis and tackle him to the bottom rack of the cell. (*Id.* (19:5-8). Then, Gunn, believing Ellis was apprehended by Officer Fox, went after Washington (outside of the cell), admitting he stomped Washington two times in the face. (*Id.* (19:9-14)).

      Officer Gunn contends he did not punch, kick, or otherwise strike Ellis at any time during the cell search, instead testifying that he tackled Ellis to the bottom bunk of the cell because Ellis attempted to flee the cell. (Doc. 62-2 at 20 (19:2-20)). Officer Murphree also testified that he did not witness Gunn hit, punch, kick, or otherwise strike Ellis at any time during the cell search. (Doc. 57-4 at ¶ 5).

      At first glance, it appears Ellis and Gunn have presented conflicting stories regarding what

happened inside Ellis's cell, differences which could change the outcome of the analysis of the *Hudson* factors depending on which story the trier of fact believed. However, as the Eleventh Circuit has held, a plaintiff's conclusory allegations regarding the injuries he sustained, when "unsupported by any physical evidence, medical records or [] corroborating testimony of witnesses," should be "discount[ed]" in considering a motion for summary judgment on an excessive force claim. *Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990). Specifically, Ellis presents no other testimony or evidence to corroborate that Officer Gunn punched or kicked him. To the contrary, the body chart conducted shortly after the incident shows only redness and some swelling to his eyes, which are clearly attributable to the mace Sgt. Aaron deployed, and pain to Ellis' left shoulder. (Doc. 62-4). There is no evidence Ellis further complained about or sought medical treatment for his shoulder. There are no documented bruises or cuts on Ellis's body chart that would be expected after being punched and kicked, as he alleges. As such, Ellis's version of the events that took place in his cell is insufficient to defeat Officer Gunn's motion for summary judgment.

The lack of physical injuries (other than from the mace) also supports the conclusion that any force Officer Gunn deployed was not the sort that is "repugnant to the conscience of mankind," as required to state a claim for excessive force. *Hudson*, 503 U.S. at 9-10. Considering the first of the *Hudson* factors, the need for the application of the force, Officer Gunn and one other officer were responsible for conducting a cell block shakedown of Ellis's cell. Ellis, an inmate admittedly known to fight officers, was seen with contraband. There were three inmates in the cell that was supposed to have only two inmates; the officers were outnumbered. Washington went after Gunn. Even considering only these facts, it is reasonable to conclude some use of force to restrain Ellis would have been needed. The next *Hudson* factor to consider is the relationship between that need

and the amount of force used. As discussed above, Ellis's testimony that Officer Gunn started punching, kicking, and stomping his head without warning is belied by the medical evidence. Instead, the record establishes that, at most, the altercation between Ellis and Gunn caused Ellis some shoulder pain that was documented on his body chart, but that he did not complain of again. That amount of force is not out of proportion to the need of an officer who was outnumbered during a shakedown, facing a known violent inmate, and who had already been attacked by one of the inmates in the cell. The third *Hudson* factor requires consideration of the threat reasonably perceived by the responsible official. The shakedown involved twenty correctional officers searching a unit with ninety-six inmates. Although shakedowns are routinely performed, they are dangerous and pose known risks to the officers performing them. (Doc. 57-2 at 10 (36:5-15)) (discussing prioritizing officer safety and maintaining control of inmates during shakedowns as being necessary to prevent a major incident). As noted above, Officer Gunn was with one other officer when he was sweeping Ellis's cell, that had an extra inmate inside. Washington had already come at Officer Gunn, and Ellis, a known fighter, had contraband. Officer Gunn reasonably perceived Ellis as a threat. The fourth *Hudson* factor requires evaluation of any efforts to temper the severity of the response, if any, then the court will look at the extent of the injury suffered by the inmate.

     Applying these factors to the present case, Officer Gunn's use of force was reasonable and not excessive as a matter of law. The lack of any evidence of injury other than minor shoulder pain that Ellis never complained of again shows that there was no great use of force. Furthermore, the incident occurred during a shakedown where Ellis was discovered to have contraband. Ellis admitted that he has a tendency to fight correctional officers and that he "ain't the one to be pulling up on." (Doc. 53-1 at 26 (97:11-19)). This was a high-risk situation where Ellis was found to be

11

violating rules, creating a disturbance, and being aggressive. It was reasonable for Officer Gunn to use the amount of force he did to maintain order and recover contraband.

### B. Excessive Force Claim Against Sgt. Aaron

#### 1. Qualified Immunity

Like Officer Gunn, Sgt. Aaron argues there is no need for further analysis because Ellis has failed to present evidence that Sgt. Aaron violated Ellis's constitutional rights by using excessive force following the cell search on July 16, 2017. (Doc. 52 at 5-6).

#### 2. Excessive Force

Applying the *Hudson* factors, Sgt. Aaron's use of the baton was not excessive. First, Ellis did not suffer an injury that was objectively harmful enough to establish a constitutional violation. Ellis does not claim he was injured when Aaron hit him with a baton because Aaron did not hit him hard. (Doc. 53-1 at 29, 33 (109:1-12; 124:19-20)). Thus, the primary use of force Ellis complains of is Sgt. Aaron's use of mace.[3] The use of chemical agents on recalcitrant prisoners is not per se unconstitutional. *Thomas v. Bryant*, 614 F.3d 1288, 1310 (11th Cir. 2010). Thus, as to Sgt. Aaron's use of mace, the remaining *Hudson* factors must be considered. Ellis argues that any force was unreasonable because he followed orders, he did not hit an officer, and he was not a threat to any officer. (Doc. 60 at 7).

According to Ellis, he sat on the bench outside of his cell, unsecured, for about five minutes before Sgt. Aaron arrived. (Doc. 53-1 at 13 (44:13-21)). Aaron then walks up to Ellis, and, based on Aaron's "aggressive" approach, Ellis believes that Aaron knew he fought with Gunn. (*Id.* at 17 (58:6-18)). As Aaron approaches, he orders Ellis to stand up, and Ellis stands. (*Id.* at 17-18

---

[3] Although Ellis testified that Aaron hit him with his baton, Ellis also testified that he did not suffer any injuries from Aaron hitting him with the baton because Aaron did not hit him that hard. (Doc. 53-1 at 29, 33 (109:1-12; 124:19-20)).

(60:6-62:8)). Even though Ellis stood up, Aaron hits Ellis in the legs and buttocks with a baton and immediately sprays him in the face with mace. (*Id.*). Aaron then orders Ellis to get on the wall. (*Id.* at 19 (69:10-16)). Ellis did not comply with the order and testified he was "still tripping off [Aaron] spraying me" and asked Aaron "why are you spraying me man" and why are you "hitting and spraying me[?]" (*Id.* (69:16-19)). Officer Tillman approached Ellis and escorted him to the wall, placing Ellis in handcuffs. (*Id.* at 21 (74:9-12)).

Sgt. Aaron testified that, while Gunn and Washington were scuffling, he saw an inmate coming out of his cell, then noticed it was Ellis. (Doc. 62-1 at 37 (37:5-11). According to Aaron, he told Ellis to "stop," but Ellis would not stop blurting out obscenities to Aaron and the rest of the Block, trying to get them "hyped up." (*Id.* (37:13-17)). Aaron then told Ellis to "calm down" and ordered him to face the wall. (*Id.* (37:17-18)). Aaron testifies that Ellis would not listen and that Ellis threw his hands up still saying stuff, so Aaron sprayed Ellis and told him to turn and around to be handcuffed. (*Id.* at 18-22).  After being sprayed, Ellis was handcuffed and taken to the infirmary for decontamination. (*Id.* at 37-38 (37:21-38:1))

Comparing the parties' versions of events, there remains a genuine issue of material fact as to whether Sgt. Aaron's use of the mace constituted excessive force. Ellis contends that, although unsecured, he was complying with Sgt. Aaron's command to stand and not posing a threat, but Sgt. Aaron sprayed him with the mace and hit him with the baton without warning. Although Ellis did not comply with additional orders to get on the wall, Ellis does not complain of any additional force before Officer Tillman took over. However, if Sgt. Aaron's version of events is believed, then Ellis was causing a disturbance and not obeying any of Sgt. Aaron's orders. In that case, Sgt. Aaron would have been justified in using some force to get Ellis to comply.

Construing this evidence in Ellis's favor, a reasonable finder of fact could conclude that

13

the force Sgt. Aaron applied was not a good faith effort to maintain or restore discipline. According to Ellis, he had complied with Sgt. Aaron's order to stand and had received no other instructions when Sgt. Aaron decided to hit him with the baton and spray him with mace. However, because questions of fact remain, summary judgment is not appropriate on this claim.

### IV. Conclusion

Based on the foregoing, defendant Officer Gunn's motion for summary judgment (doc. 55) is **GRANTED**. Defendant Sgt. Aaron's motion for summary judgment (doc. 51) is **DENIED**. Counsel for Ellis and counsel for Sgt. Aaron should file a joint status report by **August 17, 2020**, informing the court whether they believe this case would benefit from mediation or if they are ready to begin pretrial proceedings.

DONE this 3rd day of August, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE